UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYSHON D. BRAGGS,

    Petitioner,

v.

SHERMAN CAMPBELL,

    Respondent.

Case No. 17-cv-12593
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS [1],
GRANTING CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

In September 2010, Jerrell Kent was robbed by Demetrius Bennett and a masked man. Apparently, authorities did not have enough evidence to charge the disguised perpetrator for several years. But in 2014, authorities charged Rayshon Braggs with being Bennett's partner. The evidence against Braggs was not overwhelming, but it was enough to convince a jury that Braggs was the masked man. Braggs appealed, arguing that incriminating text messages should have been excluded from trial and that the evidence was not sufficient to prove—beyond a reasonable doubt—that he was the masked man. The Michigan Court of Appeals rejected these claims and affirmed Braggs' convictions. The Michigan Supreme Court declined to hear Braggs' appeal.

Braggs has now come to federal court, petitioning for a writ of habeas corpus. Braggs raises the same two issues he presented to the Michigan Court of Appeals. As will be explained below, these claims do not warrant a writ.

# I.

## A.

This case arises out of the armed robbery of Jerrell Kent. In September 2010, Demetrius Bennett went to Kent's apartment. Kent had known Bennett for over 10 years and let him in. (PageID.98–99.)[1] Once inside , Bennett drew a gun on Kent. *People v. Braggs*, No. 323274, 2016 WL 232318, at *1 (Mich. Ct. App. Jan. 19, 2016). At about the same time, a masked man working with Bennett entered the apartment. *Id.* Bennett and the accomplice proceeded to tie up Kent and steal Kent's money and drugs. *Id.* Kent struggled free and fled into a courtyard. *Id.* The two assailants caught up to Kent; the masked assailant wrestled Kent to the ground and "Bennett shot the victim in the leg." *Id.* The two assailants then fled. *Id.* A blue Ford Taurus was seen speeding away from the scene. *Id.*

## B.

Some years passed. Eventually, authorities believed they had enough evidence to prove that Rayshon Braggs, who is one of Bennett's brothers (PageID.151), was the masked man. So Braggs was charged in early 2014 and tried a few months later. (*See* PageID.91.) At the time of his trial, Braggs was 22 years old; he had just turned 19 at the time Kent was robbed. (PageID.86.)

At Braggs' trial, witnesses testified that shortly before the robbery, Bennett went to Dena and Irvin Morrow's house. (*Compare* PageID.655, 676.) The Morrows were Bennett and Braggs' parents (Bennett had other brothers too). (PageID.671, 668, 669, 699.) At the time of the robbery, Jacqueline Duckett was living at the Morrows' house; Bennett had gone to the house to borrow a blue Ford Taurus from Duckett. (PageID.653–655, 676.) Braggs was living at the Morrows' house at that time too. Indeed, according to both Duckett and Dena Morrow, Braggs was asleep on the

---

[1] Unless indicated otherwise, all "PageID." citations are to the Rule 5 materials, ECF No. 9.

couch when Bennett left with the Taurus. (PageID.656–657; PageID.678–679.) Dena Morrow further testified that she was disabled at the time, that Braggs was her appointed "chore provider," and that he remained at the house for the day. (PageID.676–677.)

At trial, the prosecution introduced text messages that Bennett had received prior to the robbery. (PageID.590–598.) Some of the messages were between Bennett and someone that Bennett had labeled "Ray" in his phone. (PageID.617, 619.) And some of the messages were between Bennett and the number (269) 501-5842. (PageID.572, 583, 612.) At trial, a detective testified that when he interviewed Braggs not long after the robbery, Braggs said his phone number was (269) 501-5842. (PageID.612.) The jury was presented with texts from Bennett's phone associated with both "Ray" and the 5842 number. (*See* PageID.588–589.) Some of the texts from "Ray" suggested a plan. For example, one message from "Ray" said, "You want to do it come get me," with Bennett responding, "Yay we about to." (PageID.591.) Although the prosecutor implied that "Ray" might be short for "Rayshon," Dena Morrow testified that her sons did not call Braggs "Ray" but sometimes called him "Park." (PageID.693, 694) Irvin Morrow also testified that people would call Braggs "Park Park." (PageID.701.) Further suggesting that the "Ray" texts were not from Braggs, one text stated, "he at the crib solo" and "Solo" was the nickname of one of Bennett's other brothers, Solomon Bennett. (PageID.687.) According to Bragg's counsel, the content, tone, or style of the texts on Bennett's phone from the 5842 number (the number Braggs had provided as his) suggested that the person with that number was not the same person as "Ray." (PageID.732–733.)

The same detective who interviewed Braggs also visited Kent in the hospital after the robbery. The jury learned that when the detective provided Kent with a photographic lineup that included Braggs, Kent could not identify his attacker among the photos. (PageID.576, 628.) And

3

Kent told the jury that he had known Bennett and Braggs for about 10 years (PageID.390, 394) and would have been able to recognize Braggs even with a mask on (PageID.394). Indeed, Kent testified as follows: "Q[uestion:] So, you would have been able to look at the physical characteristics of the guy in the mask and probably say this is Demetrius [Bennett's] little brother, right? A[nswer:] Yes, sir. I've known [Braggs] so long, yes. Q: Yeah. And that didn't occur to you that that person was Rayshon Braggs, right? A: No, sir." (PageID.395.)

The jury also heard from a forensic scientist employed by the Michigan State Police. (PageID.533.) From the crime scene, authorities recovered a black hat with two cutouts for eyes and a 4XL sweatshirt (at the time of incarceration, Braggs was only 5'5" tall and 150 pounds). (PageID.436, 441, 443, 817.) The forensic scientist testified that she did not collect DNA from the sweatshirt and hat; she merely received very small samples for testing. (PageID.547.) Because the small samples could have been a swab of the items or a cutout from just one part of the items, the prosecution did not establish that the DNA she tested was the only DNA on the entire sweatshirt or entire hat. (PageID.553–555; *see also* PageID.547–548, 721–722.) The forensic expert told the jury that the DNA on the samples matched Braggs' DNA. (PageID.538–539, 542.)

Upon hearing the above and other evidence, the jury convicted Braggs of armed robbery and unlawful imprisonment. (PageID.765.) Braggs was sentenced to 12 to 30 years' imprisonment on the armed robbery count and a concurrent sentence of 5 to 15 years on the unlawful imprisonment count. (PageID.788.)

## C.

Braggs appealed. In his brief to the Michigan Court of Appeals, Braggs argued that by admitting the incriminating text messages, the trial court abused its discretion and violated his due process rights. (PageID.807.) Braggs also argued that there was not sufficient evidence to find him

guilty beyond a reasonable doubt. (*Id.*) The Michigan Court of Appeals affirmed Braggs' convictions. *See generally People v. Braggs*, No. 323274, 2016 WL 232318 (Mich. Ct. App. Jan. 19, 2016).

Braggs then sought leave to appeal from the Michigan Supreme Court. The state high court was "not persuaded" that the questions Braggs presented warranted leave. *People v. Braggs*, 881 N.W.2d 813 (Mich. 2016).

**D.**

Braggs then filed a petition in federal court, asking this Court to grant him a writ of habeas corpus. The two bases for Braggs' petition are the same ones he presented to the state appellate courts: that the admission of the text messages violated due process and that there was insufficient evidence to convict. (ECF No. 1, PageID.5–9.)

**II.**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). If a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

5

**III.**

The Court takes up Braggs' claim about the admission of the text messages first; his insufficient-evidence claim second.

**A.**

Braggs argues that it was error to admit the incriminating text messages because the prosecution did not lay adequate foundation for their admission. And, according to Braggs, this erroneous admission violated his rights under the Due Process Clause. (ECF No. 1, PageID.5–6.)

The Michigan Court of Appeals addressed this claim; it said,

> Testimony was presented that defendant gave the incriminating number as his own just a week after the shooting. The number was assigned to "Ray" in Bennett's telephone, which the jury could infer referenced defendant's name "Rayshon." The messages clearly referenced preparation for the robbery that took place. Defendant's DNA was recovered from the sweatshirt and mask found at the scene of the crime.

*Braggs*, 2016 WL 232318, at *2. "Thus," the Michigan Court of Appeals concluded, "sufficient foundation was presented to support a finding that the texts related to the victim were sent by [Braggs], and it was not an abuse of discretion for the trial court to admit the text messages entered into evidence." *Id.*

Although the Michigan Court of Appeals analyzed Braggs' claim under an abuse-of-discretion standard and did not expressly reference due process, it probably still adjudicated the merits of Braggs' due-process claim such that § 2254(d) constrains this Court's review of the claim. Braggs stated in his brief to the Michigan Court of Appeals that he was "denied his due process right to a fair trial" (PageID.823) and the state appellate court invoked no procedural bar, examined the trial record, and concluded that there was no error in admitting the text messages. That sounds like merits. *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017) ("[W]hen a state court was faced with a habeas petitioner's constitutional argument but silently rejected it, 'a federal

habeas court must presume' that the state court adjudicated the federal claim on the merits." (quoting *Johnson v. Williams*, 568 U.S. 289, 301 (2013)). And this means that this Court cannot grant Braggs a writ unless he shows that the Michigan Court of Appeals' adjudication of his claim about the messages resulted in a decision that "was contrary to, or involved an unreasonable application of" the holding of a Supreme Court decision or resulted in a decision "that was based on an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d). Further, 28 U.S.C. § 2254(e)(1) requires this Court to accept the factual determinations of the Michigan Court of Appeals unless they are rebutted by clear and convincing evidence.

Braggs may have cleared § 2254(d) and rebutted the Michigan Court of Appeals' factual determination as required by § 2254(e)(1). The Michigan Court of Appeals stated, "Testimony was presented that [Braggs] gave the incriminating number as his own just a week after the shooting. *The number was assigned to 'Ray' in Bennett's telephone*, which the jury could infer referenced [Braggs'] name 'Rayshon.'" 2016 WL 232318, at *2. But having reviewed the testimony about the texts, it is far from clear that the 5842 number Braggs provided the detective was the number Bennett had assigned to "Ray." True, Braggs told the detective that his number was (269) 501-5842. (PageID.572.) And true, there were text messages from the 5842 number on Bennett's phone. And one part of the detective's testimony was that the 5842 number was associated with "Ray." (PageID.577–578.) But defense counsel objected that there were texts between "Ray" and Bennett on Bennett's phone separate and apart from texts between the 5842 number and Bennett on Bennett's phone. (PageID.588; *see also* PageID.615.) And in responding to that objection, the prosecution did not establish that Bennett had labeled the 5842 number with "Ray." (*See* PageID.589 (stating it was the prosecution's "belief" that "Ray" was the 5842 number).) Further, there was testimony suggesting that the phone number associated with "Ray" was (269) 290-9900,

7

which, of course, is not the 5842 number. (*See* PageID.619 (referencing Exhibit 35); PageID.620, 624–625.) And it would be odd that Bennett was texting to the 5842 phone number both by using "Ray" stored in his contacts and by manually typing in "2695015842." And if it were the case that the prosecution did not establish that "Ray" was the 5842 number, then the only connection between the texts from "Ray" and Braggs was that Braggs' first name is Rayshon. But there was no evidence that Braggs ever went by Ray—in fact, witnesses said Braggs' nickname was "Park" or "Park, Park." And "Ray" could stand for a number of different names.

So Braggs might have cleared the hurdles for a writ set out in § 2254(d) and § 2254(e)(1). But assuming he has, it would not automatically follow that Braggs is entitled to a writ of habeas corpus. Sections 2254(d) and 2254(e)(1) operate as hurdles to a writ, not conditions that, once satisfied, warrant one. The question of whether Braggs' rights under the Due Process Clause were violated would remain. As will be explained next, Braggs has not established a violation of the Due Process Clause. So the Court will assume without deciding that Braggs cleared § 2254(d) and § 2254(e)(1) and address Braggs' due-process claim *de novo*.

The erroneous admission of evidence does not amount to a violation of the Due Process Clause unless it deprives the defendant of a fundamentally fair trial. *See Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) ("[D]ue process is violated, and thus habeas relief warranted, only if an evidentiary ruling is so egregious that it results in a denial of fundamental fairness." (internal quotation marks omitted)). That is not a low bar. *See Bojaj*, 702 F. App'x at 321 ("*Ege* explained that, if the challenged evidence, contrasted against the prosecution's properly admitted evidence and the defendant's rebuttal evidence, was 'a crucial, critical highly significant factor' in bringing about a guilty verdict, the improperly admitted evidence creates a due process violation.").

Here, the admission of the text messages did not deprive Braggs of a fundamentally fair trial. First, the jury heard defense counsel's lengthy objection that the texts from "Ray" were distinct from the texts from the 5842 number that Braggs gave the detective (the discussion was not at sidebar). (PageID.578–589.) And on cross examination, defense counsel established the distinction (or came close to establishing it) and forced the detective to speculate that Braggs may have had two phones. (PageID.612, 626–627.) Second, the text messages from "Ray" suggest a plan for the attack; Braggs' DNA was found on items worn by the attacker. Coupling those two facts give reason to believe that it was Braggs who sent the incriminating texts to Bennett. Third, at closing, Braggs' counsel thoroughly argued that the texts from "Ray" were not from the 5842 number Braggs had given to the detective:

> You can specifically see on the People's Exhibit 11 through 59, defense Exhibits A through D, you can specifically see Bennett, if it's him, communicating with one person, because the person has a name Ray from [Exhibits] 11 through 59. They're going back and forth. Texts back and forth. And then [Bennett] communicates on that same phone with the number that he specifically types in 2695015842. He specifically types it in. So, common sense, as the Prosecutor said, he's not going to communicate with someone that's in his phonebook, and then specifically type his number in, and then go back to the person in his phonebook, and—that doesn't make any sense. He's talking to two different people. . . .
>
> [W]hen you look at defense Exhibits A through D when Bennett talks to that guy— person, that person or guy is at work. You can see it's two different people. One person named Ray is actively participating in the robbery. The second person at the number that [the detective] said Mr. Braggs gave to him, that person is at work.

(PageID.732–733 (paragraphing altered).) Because there was some basis to connect the texts from "Ray" to Braggs, because Braggs' counsel fully equipped the jury with a way to find that "Ray" was not Braggs, and because there was other evidence of guilt (including DNA evidence), the admission of the texts was not "so egregious that it result[ed] in a denial of fundamental fairness." *Ege*, 485 F.3d at 375.

In short, the Court finds no due-process violation warranting a writ of habeas corpus.

9

**B.**

Braggs also claims that there was insufficient evidence for the jury to find, beyond a reasonable doubt, that he was the masked attacker. (ECF No. 1, PageID.7–9.)

The Michigan Court of Appeals addressed Braggs' insufficient-evidence claim. The state appellate court gave four reasons for finding the evidence sufficient to convict:

> [Braggs'] DNA, and no one else's, was recovered from the sweatshirt and mask found at the scene of the crime.
>
> [Braggs] is Bennett's brother.
>
> The car that Bennett and the masked man used to escape the scene belonged to someone who lived at [Braggs'] mother's house where [Braggs] slept the night before the robbery.
>
> Text messages sent between Bennett and a telephone number that [Braggs] identified as his reveal planning and preparation for the armed robbery that day.

*Braggs*, 2016 WL 232318, at *1–2 (paragraphing altered). "The above-referenced circumstantial evidence viewed as a whole," the state court continued, "was sufficient for a jury to find that defendant was the masked man who committed the crimes." *Id.*

It is again a close call as to whether Braggs may have cleared § 2254(d) for this "on the merits" adjudication. The Michigan Court of Appeals' stated, "Text messages sent between Bennett *and a telephone number that [Braggs] identified as his* reveal planning and preparation for the armed robbery that day." 2016 WL 232318, at *1 (emphasis added). The Court has already explained that the record suggests that the incriminating texts from "Ray" to Bennett were *not* from the phone number that Braggs said was his. And the other facts that the Michigan Court of Appeals identified as supporting Braggs' conviction were susceptible to challenge.

But even assuming without deciding that Braggs has cleared § 2254(d), it would still be the case that Braggs must establish that there was insufficient evidence for the jury to find that he

was the masked attacker. To be more precise, Braggs must show that "after viewing the evidence in the light most favorable to the prosecution," no rational trier of fact would have found beyond a reasonable doubt that he was the masked attacker. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Braggs has not made this showing.

That is not to say that the prosecution's case was strong. Braggs' mother provided an alibi. (PageID.676–677.) When Bennett gave the detective a tip, he mentioned not just Braggs but one of his other brothers, Solomon Bennett. (PageID.566.) Evidence suggested that Solomon's nickname was "Solo" (PageID.687, 693) and the first incriminating text to "Ray" stated, "he at the crib solo" (PageID.590). And Bennett had other brothers too. (PageID.672, 691.) The sweatshirt was 4XL; yet Braggs was not a large man. Kent testified that he had known Braggs for ten years and would have recognized him even with a mask; yet Kent did not think that Braggs was his attacker. (PageID.394–395.)

That said, taking the evidence in the light most favorable to the prosecution, a rational juror could be without reasonable doubt that Braggs was the masked man. First, the jury had the right to reject the alibi provided by Braggs' mother. *See Brooks v. Tennessee*, 626 F.3d 878, 887 (6th Cir. 2010) ("As a general rule, the assessment of the credibility of witness is generally beyond the scope of habeas review." (internal alterations and quotation mark omitted)). Second, Braggs' DNA was found on the items worn by the masked man. True, it is possible that other people's DNA were also on the items. And it is possible that Braggs' DNA could have transferred onto the items well before the attack. But these were merely possibilities that the jury was free not to indulge. And the fact that Braggs' DNA was found on not one sample but two (from two different items) increases the probability that Braggs, and not someone else, wore the items during the attack. (PageID.536, 538.) Second, texts from "Ray" planning the attack were found on Bennett's phone.

Although Braggs went by "Park" or "Park, Park," it would not be irrational to think that "Ray" was short for Rayshon. And while a strong case was made that the phone number Braggs provided to authorities was not the number Bennett had associated with "Ray" in his phone, a rational juror could credit the detective's testimony that "Ray" was associated with the 5842 number (PageID.577) or that Braggs had two phones (PageID.627). Together, the texts and DNA would permit a rational juror to conclude beyond a reasonable doubt that Braggs was Kent's masked attacker.

In short, the Court finds that Braggs has not shown that his conviction lacked sufficient evidence.

**IV.**

For the reasons given, the Court DENIES Braggs' petition for a writ of habeas corpus. Because reasonable jurists could disagree with this Court's analysis of Braggs' claims, the Court GRANTS Braggs a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). The Court GRANTS Braggs the right to proceed *in forma pauperis* on appeal. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: November 14, 2019

                                                  s/Laurie J. Michelson
                                                  LAURIE J. MICHELSON
                                                  UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 14, 2019.

                                              s/Erica Karhoff
                                              Case Manager to
                                              Honorable Laurie J. Michelson